IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CANON KABUSHIKI KAISHA,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 22-cv-01889 |

## COMPLAINT

Canon Kabushiki Kaisha ("Canon" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including camera batteries, chargers, lens caps and print heads, using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

III. THE PARTIES

**Plaintiff**

4. Canon Kabushiki Kaisha is a corporation organized under the laws of Japan with a principal place of business at 30-2 Shimomaruko 3-chome, Ohta-ku, Tokyo, Japan 146-8501.

5. Canon has been one of the preeminent leaders in imaging and research and development since its founding in 1937. As of 2021, Canon employed more than 180,000 people worldwide and has ranked among the world leaders in development of photography and print reproduction technology for more than 80 years.

6. Plaintiff incorporates a variety of distinctive marks in the design of its various camera and printing products (collectively, the "Canon Products"). As a result of long-standing use, Plaintiff owns common law trademark rights in its trademarks. Plaintiff has also registered several of the trademarks with the United States Patent and Trademark Office. The Canon Products often include at least one of Plaintiff's registered trademarks. Plaintiff uses its trademarks in connection with the marketing of Canon Products, including the following registered marks, collectively referred to as the "Canon Trademarks."

| Registration Number | Mark | Goods and Services |
|---|---|---|
| 3,189,094 | Canon | For: Batteries, battery chargers; car battery adaptors; AC adaptors; cases for cameras, digital cameras, video camcorders in class 9. |
| 0,603,299 | Canon | For: Photographic equipment, namely, cameras and parts thereof, camera lenses, telephoto lenses; view finders; flash units and parts thereof; machines for making photographic copies of documents, papers and books and parts thereof; machines for making x-ray photographs and parts thereof; photographic accessories, namely, camera holders, tripods, cable releases, self-timers, lens mounts, lens caps, lens hoods, light filters in classes 1, 9, and 10. |

| 1,315,232 | CANON | For: Developing chemicals for photography and electrophotography, namely, developers, and toners in class 1.<br><br>For: Miniature electric motors in class 7.<br><br>For: Photographic and cinematographic apparatus and instruments and accessories therefor, namely, cameras, cinecameras, optical lenses, camera cases, camera bags, camera holders, eye cups, straps, extension tubes, close-up lenses, lens mount converters, releases, magnifiers, motor drives, extension cords, battery packs, timers, remote controllers, interchangeable camera finders, focusing screens, dioptric adjustment lenses, filters, filter holders, electronic flashes, under water housings, viewers, microphones, lens hoods, lens caps and lens cases; video apparatus and instruments and accessories therefor, namely, video cameras, recorders, carrying cases, remote controllers, electronic view finders, car battery adapters; computers and computer data processors for printers; electronic calculating machines; telephone facsimile transmitters and receivers; photocopying apparatus and instruments and accessories therefor, namely, electrophotographic copiers, paper feeders, sorters and pedestals; micrographic apparatus and instruments and accessories therefor, namely, micrographic readers; laser beam printers; optical fibers; printers and electrical and electronic output; card readers; AC adapters; X-ray photographic apparatus and instruments and accessories therefor, namely, X-ray cameras; ophthalmic apparatus and instruments and accessories therefor, namely, retinal cameras, fundus cameras, eye refractometers in class 9. |
| 2,379,305 | EOS | For: Digital cameras and parts therefor in class 9. |
| 1,497,499 | EOS | For: Cameras and camera cases in class 9. |

The above United States registrations for the Canon Trademarks are valid, subsisting, and in full force and effect. Since the U.S. registrations for the Canon Trademarks are incontestable pursuant to 15 U.S.C. § 1065, the registrations constitute conclusive evidence of their validity

4

and of Plaintiff's exclusive right to use the Canon Trademarks. True and correct copies of the Federal Trademark Registrations for the above Canon Trademarks are attached hereto as **Exhibit 1**.

7. The Canon Trademarks are distinctive when applied to the Canon Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products or contract with others to do so, Plaintiff has ensured that products bearing the Canon Trademarks are manufactured to the highest quality standards.

8. The Canon Products and Canon Trademarks are widely known to and enormously popular with individual and business consumers worldwide. Canon has promoted and advertised the Canon Products and Canon Trademarks extensively for many years. The Canon Trademarks are among the most renowned and immediately recognizable marks in the technology world today. The Canon Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The widespread fame, outstanding reputation, and significant goodwill associated with Plaintiff's brand has made the Canon Trademarks valuable assets of Plaintiff.

9. Plaintiff has expended substantial time, money, and other resources in advertising and promoting the Canon Trademarks. Canon Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the Canon Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. Canon Products have become among the most popular of their kind in the U.S. and the world. The Canon Trademarks have achieved tremendous fame and recognition which has only added to the

inherent distinctiveness of the marks. As such, the goodwill associated with the Canon Trademarks is of incalculable and inestimable value to Plaintiff.

10. Genuine Canon Products are recognized by the public as being exclusively associated with Plaintiff's brand. A significant aspect of Plaintiff's business and resulting revenues has been for many years, and continues to be, the goodwill and excellent reputation associated with the Canon Trademarks, which assures consumers of the quality and legitimacy of the products they purchase. In 2021, Canon's net sales were over 30 billion dollars.

11. For many years, Plaintiff has operated a website at canon.com. Millions visit usa.canon.com, the official United States Canon website, which prominently displays the Canon Trademarks. Sales of Canon Products via the usa.canon.com website are significant. The website features proprietary content, images and designs exclusive to Plaintiff's brand.

**The Defendants**

12. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

13. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking

6

of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

14. The success of Plaintiff's brand has resulted in significant counterfeiting of the Canon Trademarks. Consequently, Canon has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet monitoring or reported from its own distribution network. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering counterfeit Canon Products on online marketplace platforms such as Amazon, eBay, and Wish.com, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States* prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 2**). The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id*. Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id*.

15. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to

7

"routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

16. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

17. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating

under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the Canon Trademarks, and none of the Defendants are authorized retailers of genuine Canon Products.

18. Many Defendants also deceive unknowing consumers by using the Canon Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Canon Products. Other e-commerce stores operating under the Seller Aliases omit using Canon Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Canon Products.

19. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

20. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with

9

common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

22. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

24. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction,

occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use Canon Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

25. Defendants' unauthorized use of Canon Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Canon Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Canon Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Canon Products offered, sold or marketed under the Canon Trademarks.

28. Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products using counterfeit reproductions of the Canon Trademarks without Plaintiff's permission.

29. Plaintiff is the owner of the Canon Trademarks. The United States Registrations for the Canon Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Canon Trademarks and are willfully

infringing and intentionally using counterfeits of the Canon Trademarks. Defendants' willful, intentional and unauthorized use of the Canon Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Canon Trademarks.

32. The injuries and damages sustained by Plaintiff has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

35. By using the Canon Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of Plaintiff's brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

    a. using the Canon Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Canon Product or is not authorized by Plaintiff to be sold in connection with the Canon Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Canon Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Canon Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

      d. further infringing the Canon Trademarks and damaging Plaintiff's goodwill; and

      e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Canon Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, Amazon, and Wish.com (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Canon Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of the Canon Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Canon Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 12th day of April 2022.     Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Isaku M. Begert
Rachel S. Miller
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
ibegert@gbc.law
rmiller@gbc.law

*Attorneys for Plaintiff Canon Kabushiki Kaisha*